# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

TERRI STERBENS,

    Plaintiff,

v.

NEVADACARE, INC., *et al.*,

    Defendants.

Case No. 2:06-cv-1261-LDG (RJJ)

**ORDER**

Terri Sterbens has filed a complaint against her former employer, NevadaCare, Inc., and its parent corporation, I/MX Information Management Solutions, Inc. The defendants' move for summary judgment (# 14) as to each of Sterbens' claims, which motion she has opposed (#17).

Background

In 2004, Sterbens worked as a Supervisor, Case Management, for NevadaCare. Sterbens worked four days each week, from 8:00 to 5:00 each day. She also supervised other case managers, including Joyce O'Brien, Paulus Van Dooremaal, Josephine McGanty, Anna Yannone, Jannelle Barrie, and Tommy Clugg.

Sterbens alleges that in "early 2004" she and her case managers were promised a bonus of two months' salary, if they met a targeted reduction in "bed days."

In September 2004, she conducted a performance review of Van Dooremaal, and indicated that he "would be great management material."

In November 2004, Sterbens' supervisor, Ann Mammina, notified her that NevadaCare was creating a new position. Sterbens concedes that Mammina initially offered the new position to Sterbens, which Sterbens declined. Mammina instructed Sterbens to tell other case managers of the new position. Sterbens asserts that, in describing the duties of the new position, Mammina indicated that she wished it to be filled by a man and failed to reveal that it would be a management position over Sterbens' position.

Van Dooremaal was the only case manager to apply for the new position, and was selected by NevadaCare to fill the position. On November 19, 2004, he signed a Job Description identifying the position as "Senior Manager Hospitalist and Case Management." The job description indicated that the duties included "provid[ing] daily leadership and supervision of the case management/social services and care coordination staff. . . ."

The parties do not dispute that Van Dooremaal became Sterbens' supervisor in this new position. Sterbens argues, however, that she did not become aware that Van Dooremaal had become her supervisor until her return to work in late March 2005 from a medical leave that she began in late January 2005.

On Sterbens' second day back at work, Van Dooremaal announced that he would be meeting individually with each of the case managers to discuss changes that would be made. After Van Dooremaal met with Sterbens on March 30, he sent her an e-mail on March 31 reciting the changes to Sterbens' assignments, and requesting that she respond by Monday, April 4. Among the changes, Van Dooremaal indicated that Sterbens would need to start working five days each week.

Sterbens responded, by letter, on April 4.  In that letter, she asserted that, for her to accept the new assignments, she would need at least four to six weeks of training, a support staff of at least three to four persons, and a six to twelve month time line to initiate the Disease Management program (rather than the May 1, date identified by Van Dooremaal).  Sterbens further indicated that she expected an increase in compensation and the ability to retain her four-day work week.

On April 6, NevadaCare (through Van Dooremaal and Kristie Johnson), informed Sterbens, by letter, that it was the "understanding that you have declined this position based on your demands for increased compensation and additional ancillary staff, all while continuing your existing work schedule."  The letter goes on to state that NevadaCare was "accepting your voluntary resignation effective today, April 6, 2005."  Sterbens refused to sign the letter.  NevadaCare then agreed to Sterbens' demand to continue working four days per week, but rejected her other conditions.  When Sterbens declined to accept or reject the new job duties, NevadaCare provided her with a termination letter, indicating that it was interpreting her response as a "refusal to follow work related instructions," an activity for which she could be terminated.

Sterbens received a final check from NevadaCare, but alleges that the defendants improperly deducted $1,582.01 from that check.

In her complaint, Sterbens alleges the following claims.

1) That the defendants violated the Family and Medical Act (FMLA), 29 U.S.C. §§2661 *et seq*., by (a) eliminating her position during her leave of absence, (b) offering her a demotion upon her return from leave, (c) demanding that she accept a position that would require her to work a longer work week and that had other less favorable terms and conditions of employment, and (d) terminating her after offering her the demotion.

    2)    That the defendants discriminated against the plaintiff on the basis of her gender, because she was replaced by Van Dooremaal.[1]

    3)    That the defendants breached a contract by failing to pay the promised bonus.

4 & 5) That the defendants improperly deducted $1,582.01 from her final paycheck.

Motion for Summary Judgment

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one required to prove a basic element of a claim. *Anderson,* 477 U.S. at 248. The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of

---

[1] Sterbens filed a charge of discrimination on September 15, 2005, and was mailed a right to sue letter on April 10, 2006. She filed the instant complaint on June 29, 2006.

4

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact. Fed. R. Civ. Pro. 56(e). As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The allegations or denials of a pleading, however, will not defeat a well-founded motion. Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### Final Paycheck Claims

Without dispute, the defendants deducted $1,582.01 from the final paycheck they paid to Sterbens. The defendants argue that the money they deducted from her final paycheck represents the amount of money they advanced to Sterbens for Paid Time Off Days that she used during her medical leave, but which days she had not yet accrued. Sterbens asserts that the deduction violates Nev. Rev. Stat. 608.100(1)(c) and (2).

In relevant part, §608.100(1)(c) makes it unlawful for an employer to "[p]ay a lower wage, salary or compensation to an employee than the amount earned by the employee when the work was performed. Section 608.100(2) further provides that it is unlawful for an employer to require an employee to rebate, refund, or return any part of the wage, salary, or compensation earned by and paid to the employee.

At a minimum, a genuine issue of material fact remains whether, on January 1 of each calendar year, the defendants' employees accrue all of their Paid Time Off Days for that year as part of their compensation. The defendants' own employee handbook expressly provides that, on each January 1, "all employees with one year of service will receive their entire award of [Paid Time Off] Days for the forthcoming year." The conditions stated within the handbook for receiving this entire award of Paid Time Off Days is to have at least one year of service, and to be working for the defendants on January 1, of the forthcoming year.

The court recognizes that the defendants promulgated an additional policy stating that "[e]mployees terminating after taking PTO leave in excess of what would have normally accrued to the date of termination will owe the Company and the Company may deduct such amount from the employee's final payroll payment." The defendants' reliance upon this additional policy fails for several reasons. First, the additional policy does not seek reimbursement for payments made for Paid Time Off days in excess of those actually accrued through the date of termination, but rather seeks reimbursement for Paid Time Off days in excess of those that "would have normally accrued" through the date of termination. The phrase "would have normally accrued" indicates a recognition that the actual accrual of Paid Time Off is not measured by the length of service after January 1. Rather, consistent with the policy awarding all Paid Time Off Days on January 1, it would appear that all Paid Time Off Days for a given calendar year are accrued on January 1. Second, given the language of the defendants' policy awarding each employee their entire Paid Time Off for

6

the forthcoming year on January 1, this additional language appears to be an attempt to create a policy that is contrary to the terms of Nev. Rev. Stat. 608.100.  Accordingly, the court will deny the defendants' motion for summary judgment as to Sterbens' fourth and fifth claims for relief.

<u>Breach of Contract - 2004 Bonus</u>

The defendants argue that summary judgment is appropriate as to Sterbens' claim for breach of contract, for failing to pay a promised bonus, because she can show neither consideration nor sufficiently definite material terms.  The defendants further argue that the promise to pay the bonus violates the statute of frauds, because it was not reduced to a writing.

In Nevada, the statute of frauds is set forth at Nev. Rev. Stat. §111.220, which provides that "[e]very agreement that, by the terms, is not to be performed within 1 year from the making thereof" is void unless the agreement is in writing.  The defendants have not offered undisputed evidence that, by its terms, this alleged agreement to pay a bonus was not to be performed within one year of the making of the agreement.  At most, they offer evidence only that the contract was made in "early 2004," and offer their own ambiguous suggestion, unsupported by evidence, that they would not complete their promised performance, calculating the bonus, until "well after" the computation of bed days for 2004.  At a minimum, an issue of fact remains whether, by its terms, the alleged agreement would not be performed within one year of the promise to pay the bonus.

The defendants further urge that Sterbens did not identify any "consideration" for the contract, because the defendants' Case Managers had a pre-existing obligation "to perform their duties as efficiently as possible."  The defendants do not, however, cite to any decision that an employer's promise to pay an existing at-will employee a bonus for reaching a specific employment-related goal fails for lack of consideration because the employee has an existing duty to work as efficiently as possible for the employer.   Rather,

if an employer announces a change in the terms of compensation for subsequent services to be rendered by an employee and the employee continues her employment, the parties have agreed to new terms for the employee's subsequent services to the employer. That the change in terms of compensation is labeled as a "bonus" for reaching an employment-related goal does not render the agreement unenforceable.

Finally, the defendants urge that the essential terms of the agreement are so indefinite as to preclude a meeting of the minds. As to this issue, the court must agree that at least one essential term of the alleged promise is too indefinite to permit an inference that the parties had a meeting of the minds. According to Sterbens, the agreement to pay the bonus was made during a one-on-one meeting she had with Todd Meeks, CEO of NevadaCare. In her deposition, Sterbens identified the entirety of that promise as: "[i]f you guys can meet these goals . . . I'll give you and your case managers a bonus." She further testified that the bonus would "be two-months' salary." In reviewing Sterbens' opposition, and the record as a whole, the court can only conclude that the general reference to "these goals" is so indefinite that a meeting of the minds could not occur. Sterbens, herself, fails to identify "these goals" in other than a vague and general reference to a reduction in bed days. Accordingly, the court finds that Sterbens has not met her burden of showing a material issue of fact remains whether the terms of the alleged promise are sufficiently definite to support a finding that a contract was formed. Therefore, the defendants are entitled to summary judgment as to this claim.

Medical Leave

The defendants are not, however, entitled to summary judgment as to Sterbens' claim that they violated §2615(a)(1) of the FMLA. That statute provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Attaching negative employment

consequences to the exercise of a protected right, such as taking FMLA, constitutes interference or restraint of the exercise of that right.

The defendants argue that, because they restored Sterbens to her former position upon her return from FMLA, they met all of their obligations under the FMLA and are entitled to summary judgment. A claim of interference is not so limited. While an employer can interfere with FLMA rights by failing to restore an employee to her former position, such circumstance is not the only method by which interference can be accomplished. For example, in the present circumstance, Sterbens has offered evidence that on the day after her return to work, she and the other case managers were informed of changes. The following day, Sterbens was offered substantially different duties that included a requirement to work additional hours. In the subsequent exchange of letters between Sterbens and NevadaCare, it becomes clear that Sterbens' new assignment did not include supervising other individuals, although Sterbens had supervised case managers prior to her FMLA leave. While NevadaCare eventually withdrew the condition that Sterbens begin working five days each week, rather than four days, an issue of fact remains whether the new assignment was an "equivalent" to her former position.

The defendants' argument that temporal proximity does not, standing alone, establish interference fails. While temporal proximity may not establish, as a matter of law, that an adverse employment action was in response to an exercise of a protected leave, the proximity of a change of assignments two days after a return to work certainly raises an issue of material fact. This is particularly true given Sterbens' deposition testimony indicating that her change of assignments was foreshadowed by the staff meeting she attempted to conduct the day after she returned to work, and during which Van Dooremaal announced that changes would be made.

The court recognizes that the defendants have argued, and presented some evidence, that Sterbens' change of assignment was one aspect of a company-wide

restructuring. Sterbens has presented evidence, however, that the change of assignments was particularly acute as to her, particularly in relation to the case managers she had previously supervised. Accordingly, it remains for the fact-finder to resolve whether Sterbens' change of assignment was due to the defendants' re-structuring efforts, or whether it was motivated, at least in part, by her decision to use FMLA leave. Therefore, the motion for summary judgment is denied as to Sterbens' FMLA claim.

<u>Gender Discrimination</u>

The court is compelled, however, to grant summary judgment as to Sterbens' claim for gender discrimination. Sterbens' claim of gender discrimination arises from a fact undisputed by the defendants: that they promoted Van Dooremaal to become her supervisor. Neither party disputes that, prior to November 2004, Van Dooremaal was Sterbens' only male subordinate. Also undisputed by either party is that, in November 2004, Sterbens' supervisor, Mammina, informed her that NevadaCare was creating a new position. Sterbens does not dispute that Mammina initially offered this new position to Sterbens. Sterbens also acknowledges that she declined the position that Mammina described to her. Sterbens concedes that she informed her subordinate case managers, including Van Dooremaal, of the new position. Finally, Sterbens does not dispute that Van Dooremaal was the only case manager who applied for the new position, and she does not dispute that he was qualified for the new position.

Sterbens also offers her own testimony as to several additional facts, which for purposes of this motion, the court accepts as true. First, she asserts that, in describing the new position, Mammina did not state that the new position would be senior to Sterbens' position in the organization of NevadaCare's management. Rather, Mammina described the position as that of a liaison with a doctors' group that would benefit from the appointment of a male. Second, she asserts that she first learned at the end of March 2005 that Van Dooremaal had been promoted to be her supervisor.

From these additional facts, Sterbens suggests two inconsistent theories of Van Dooremaal's promotion. In her first theory, Sterbens suggests that Mammina "undersold" the new position to Sterbens in November 2004. According to this theory, Mammina knew that the new position would be senior to Sterbens' position in November 2004, but withheld that information in describing the new post. Further, once Van Dooremaal was selected to this position, Mammina (and Van Dooremaal) did not announce the promotion to any of his new subordinates, including Sterbens, for another five months. In her second theory, Sterbens suggests that Van Dooremaal was not promoted to be her supervisor until her return from medical leave. While Sterbens argues that a genuine issue of fact exists whether Van Dooremaal's promotion occurred in November 2004 or March 2005, she does not offer any argument as to how the resolution of this fact is material to her claim.

Fatal to Sterbens' claim is that she does not offer any evidence supporting an inference that either theory was the result of gender discrimination. During her own deposition, Sterbens was unable to identify the nature of her discrimination claim arising from Van Dooremaal's promotion. Though not dispositive, Sterbens' lack of awareness of any fact suggesting to her that Van Dooremaal's promotion was based upon gender emphasizes her lack of evidence to support this claim.

As to Sterbens' first theory, that Mammina intentionally misrepresented the duties of the position, Sterbens does not offer any evidence that the misrepresentation was discriminatory. Sterbens does not dispute that neither she nor any of the other female case managers applied for the position. Indeed, the only case manager to apply for the position was a male. As such, any claim of discrimination cannot rest upon Van Dooremaal's selection to the new position, rather than the selection of a female case manager, because the only case manager to apply for the position was a male. Rather, if any claim of discrimination exists, Sterbens must show NevadaCare created a process that prevented or discouraged female case managers from applying for the position. Sterbens

1 does not identify any gender-discriminatory language in the misrepresented job description.
2 Further, while Sterbens argues that Mammina undersold the duties of the position to her,
3 Sterbens herself concedes that she merely repeated this same description to all of her
4 subordinates, both male and female.  Indeed, Sterbens offers the deposition testimony of
5 Van Dooremaal to support her contention that Sterberns merely repeated Mammina's
6 description of the new position to him.  As such, no inference of discrimination can be
7 drawn from Mammina's misrepresentation of the job.  All NevadaCare case managers,
8 including Sterbens and Van Dooremaal, made the decision whether to apply for the new
9 position based upon the same mis-description of the job.

10 Other than the theory that Mammina misrepresented the position, Sterbens' offers
11 only her own testimony that, after she had declined the position, Mammina specifically
12 asked Sterbens to see if any of the other case managers would be interested in the
13 position.  In doing so, Mammina specifically asked Sterbens to inform Van Dooremaal of
14 the position, because Mammina "thought it might be better if we had a man to deal with" a
15 certain doctor.  Sterbens also concedes that she informed all case managers of the new
16 position.  Sterbens does not offer any evidence that, in describing the position to her case
17 managers, she acted in a gender discriminatory manner.  She offers no evidence that she
18 encouraged only Van Dooremaal to apply for the position, or that she discouraged her
19 female case managers from applying for the position.

20 Sterbens also fails to raise a material issue of fact suggesting that her second
21 theory, that Van Dooremaal was promoted to be her supervisor in March 2005, was gender
22 discriminatory.  While Sterben has offered some evidence suggesting that Van
23 Dooremaal's promotion at that time was an interference with her decision to take medical
24 leave, she does not offer any evidence that it was instead, or even also, motivated by her
25 gender.  The only 'gender' related remark identified by Sterbens was Mammina's request to
26 her, in November 2004, to bring the new position to the attention of Van Dooremaal.  That

remark, in addition to being a single, stray remark, was relative to the interaction of the person employed in that new position with a certain individual.  The remark was not related to Mammina's beliefs as to a gender preference for senior management.[2]

Accordingly, the court finds that summary judgment is appropriate as to Sterbens' claim for gender discrimination.  Therefore, for good cause shown,

THE COURT **ORDERS** that defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part as follows: Terri Sterbens' claims for gender discrimination and for breach of contract are DISMISSED with prejudice.  The motion is denied as to all other claims.

DATED this __12__ day of March, 2008.

_____
Lloyd D. George
United States District Judge

---

[2] Sterbens also suggests that an inference of gender-discrimination can be drawn from the fact that NevadaCare employs only three males, and all three are in management positions.  Sterbens ignores the obvious fact that most of NevadaCare's management positions are filled by women.

13